Welcome to court here in Jacksonville. I'm excited to be sitting with my colleague, Judge Tovlat, in person and our colleague, Judge Carnes, virtually. We're pleased to have everyone here. I think everyone knows about our timing system. If we let you keep talking or ask you a question, if we ask you a question once your red light has come on, please feel free to keep talking until you've answered our question or we ask you to stop. You will still have your rebuttal time at the end. I think with that, we're ready to get started on our first case. Ms. Copeland for the appellate. United States of America v. James Graham. Ms. Copeland, whenever you're ready. Thank you, Your Honor. Good morning and may it please the court. My name is Amy Lee Copeland. I represent James Graham, the appellant, in this matter. When the Southern District of Georgia entered a standing order allowing grand juries to meet remotely, it embarked on a course that none of the other ninety-four districts in the United States took. The district court justified this course by saying nothing in the text of Rule 6 requires that grand jurors be present in the same location and that the rule doesn't address whether those present must be physically together. The judge also said that the video teleconferencing provisions satisfied Rule 6 and that there was harmless error if anything was wrong. This was all an exercise of supervisory powers. This is an incorrect ruling for several reasons. First, while nothing in the text of Rule 6 says that the grand jurors have to be physically present in the same room, the ruling ignores hundreds of years of history. The grand jury is a pre-constitutional institution. Sprinkled throughout cases, beginning, the first one I found was in 1912 in Breeze, it repeatedly speaks of grand jurors meeting in the same room. Counsel? Yes, Your Honor. During how many of those hundreds of years of history was there video conferencing available? Your Honor, I am not sure when video conferencing first became effective. The government estimates that it was about a 2014 introduction, which you can see in Rule 6F, I believe. So only ten years of those hundreds of years of experience are really relevant. Your Honor, what is relevant about the video teleconferencing is the drafters of the rule knew that video teleconferencing became available when it made the 2014 amendment to Rule 6, which allowed video teleconferencing to be used to return an indictment in open court. At that time, they didn't make video teleconferencing an available option for any other procedure or any other provision of Rule 6. They knew it was available, but they didn't think it was appropriate. Indeed, when Congress... Why do we think they didn't think it appropriate instead of they simply didn't think it was necessary at that time? Your Honor, then we can look at the CARES Act, and you're right. Perhaps I misspoke about the inappropriate, but we look at the CARES Act, which made video teleconferencing available for a slew of court proceedings. These were all... Some of which it was already available for. Yeah, I'm sure, Judge. Correct? Yes, Rules 5 and 6. So the fact that it made it available to a number of proceedings, including some that it was already available, doesn't indicate that it meant not to make it available or not to prohibit it where it was available. Your Honor, I respectfully disagree because Rule 6 doesn't allow... It talks about the grand jurors being present. The CARES Act does come forward with a list of proceedings that now may be done by video teleconferencing. Does Rule 6 actually... I want to interrupt you there because does Rule 6 actually say that the grand jurors need to be present? The grand juror, what it says in 61 is, while the grand jury is in session, who may be present? The following persons may be present while the grand jury is in session. It doesn't list this grand juror specifically, but the grand jury in session has to mean the grand jurors, Your Honor. There is no statement that they have to be physically present in the same room. It's implicit, though, and even the Judge Wood, in her order, notes that Rule 6 implicitly requires presence in a manner that protects secrecy and validity of the proceedings. Is there anything, speaking of that, is there anything that you can identify that threatened the secrecy or validity of the proceedings here? Yes, Your Honor, several things. Number one, the only provision in the standing order is for physical security, that a CSO has to stand outside the courtroom door. Anytime that you use video teleconferencing facilities, you have to be worried about computer security issues. We look at the Pacer data breach from a few years ago that only became known after the fact. Recently, the Marshal Service suffered a database breach, and the Securities and Exchange Commission also suffered a database breach. The fact that nobody says in the grand jury transcript, by the way, why are these strange people on the screen, really doesn't mean anything, because the insidious nature of database breaches is that you don't know that it happens until after the fact. In terms of the reliability of the proceedings, too, the standing order makes video teleconferencing provisions. They say they've been arranged, and that the grand jurors in Augusta and Brunswick are authorized to participate in deliberations with members of the grand jury on all matters before the grand jury. But when you actually read about what the telecommunications facilities are supposed to do, it doesn't say that they can see and hear each other during deliberations. It simply says, the designated grand jury spaces in each U.S. courthouse shall be connected using telecommunications facilities such that every member of the grand jury can both see and hear witnesses. It doesn't extend that these telecommunications facilities will be available to allow- Do you have, counsel, do you have any evidence that the grand jurors couldn't see and hear each other during deliberation? Your Honor, in the trial, the only evidence that was entered at the trial level, the only thing at the- The answer being, to make a, to save you some time, the answer is no, you don't. No, I don't, Your Honor. At the trial level, the record was simply that there was a stipulation that it was conducted pursuant to the standing order. The grand jury transcript isn't even part of the record, Your Honor. You really think they deliberated separately and sent in a postcard to the clerk's office about how each of the three came to a conclusion? Your Honor, I can't speculate. Because if the stipulation was that it was conducted- Well, of course, you are, you are speculating. You're speculating that there was some breach of confidentiality, and you're speculating that there was failure to deliberate together. Your Honor, what I'm simply saying is the stipulation says that it's conducted pursuant to the standing order, and the standing order makes no provisions that they have to see and hear each other during deliberation. And it makes no provision that they may reach a decision on the indictment without consulting and deliberating together. The burden's on you, is it not? If it's a harmless error provision, which I think is my next topic, because I do think that's the most difficult thing for me to talk about, is harmless error and exactly what standard to apply here. I will turn to that, Your Honor, if you would like- Or doesn't mechanic, doesn't mechanic answer that? Your Honor, I know that harmless error is available under mechanic, typically under 52A and Vaughn. Harmless error is a burden- It's not just available. Justice Rehnquist writing, or actually it was Justice Rehnquist writing for the court, said that any defect basically in the grand jury proceedings is by pettit jury's verdict of guilt, and that the societal cost of setting aside a verdict otherwise unimpeachable and otherwise fined by the pettit jury just because of some irregularity before the grand jury were too great, and we weren't going to do that for all the reasons he laid out. Now, that's an absolute rule, isn't it? That is what mechanic says, Your Honor, but I think it's important to distinguish what happened in mechanic in cases like that from what happened here. So you're saying that was dicta? Your Honor, I'm not saying that that was dicta. I'm saying it's different- Well, if it wasn't dicta, then we're bound by the holding. If it was a holding, we're bound by the holding, are we not? Your Honor, you're always bound by a holding of the Supreme Court, but my point is simply that mechanic, Pabian, Williams, and Midland all dealt with very different situations. They dealt with whether courts could look into- Yeah, but they announced the rule of law, did they not? Didn't mechanic say that any defect in the grand jury proceeding was rendered academic and harmless by a pettit jury finding beyond a reasonable doubt after a full and fair trial? In those types of cases, Your Honor. Yeah, I mean, don't put us to the task of reading it to you. That's literally what Justice Franklin's opinion said, is it not? That is literally what it says, but look at the factual scenario of mechanic because you also are bound by cases like Nader. When you look at Pabian, mechanic, Williams, and Midland, those cases take a hands-off approach because courts don't meddle in how the government preserves its case. So they overruled mechanic? Counsel, are you saying they overruled mechanic? No, Your Honor. I'm just saying that this is a different situation. Well, if they didn't overrule mechanic, then we're still bound by the literal holding of mechanic as articulated by the Supreme Court opinion issued in the mechanic case, are we not? Your Honor, of course this court is bound by the Supreme Court. My point is simply that this was- Then isn't that the end of- Why isn't that the end of the discussion? If a holding covers this situation and compels a particular result, why is that not the end of the discussion? Because the holding doesn't cover the situation, Your Honor. This was a fundamental defect in the indictment. This wasn't a situation like in mechanic where there were two witnesses in a grand jury room in Williams and Pabian and Midland. Which explicitly violates Rule 6, does it not? Your Honor, those were explicit violations. When it says who may be present, it says the witness giving testimony may be present, not that the witnesses, plural, may be present during each other's testimony. Your Honor, that is correct. May I finish my response, however? If you would. Thank you, Your Honor. The difference is, is those kinds of cases considered how courts don't meddle and how a government conducts itself in front of a grand jury. The point Mr. Graham wishes to make is simply that this was a fundamental defect in the indictment. It was returned by a grand jury that was constituted in a manner that doesn't make it a grand jury at all. Thank you. Thank you. May it please the Court. Good morning, Your Honors. James Stuchel for the United States. In Bank of Nova Scotia, the Supreme Court ruled that a court's supervisory authority over the grand jury permits it to formulate procedural rules that are not specifically required by the Constitution or statute, as long as they don't directly conflict with the Constitution or statute. And that's exactly what the standing order did here. There's no provision of Rule 6 or the CARES Act or the administrative order for the U.S. courts that came down before COVID that requires the grand jurors to meet in the same place physically present. They could meet across the street in an office building, could they not, in a secure place? That's correct, Your Honor. I have... Or at the country club or wherever. I actually believe that's correct. I looked for... I mean, they're an independent government agency, basically. That's correct. I looked... As long as they were met in secrecy and took the testimony. I didn't find any authority that would contradict what Your Honor just stated. In fact, the grand jurors, so that would allow him to state where it occurs. Do you think, though, that they could each, say, zoom in from their own homes? Actually, that's exactly what happened in several states. I can provide the citations for that. The state, for example... It did not happen, but do you think that that is... Would you have a different argument if that were the case here? No, I don't see how. It's not the case here. We never considered doing that, but I don't think it would still violate any of the provision of law, such as Rule 6 or statute. Is there any point at which the security risks become so great that it would be a violation? Yes. In fact, it would be here if Mr. Graham could point to some specific instance of when security was violated. No, not an actual violation, but a risk of a violation. A risk. Is there any point at which the risks of lack of secrecy, say, are so great that you would say, well, we can't do it that way under the Constitution or under Rule 6? Because you wouldn't know, say, if someone was zooming in from their kitchen, if their spouse was sitting in the other room listening, taking notes, right? You would have no way to know that. Is there any point at which secrecy becomes so under threat that we would say the Constitution was violated? Well, similarly, even when the grand jury meets in person, in one room, in the courthouse, under normal circumstances, we're still not certain that secrecy is absolutely there. I mean, it's possible that a grand juror could be live streaming by some electronic device. It's possible he or she could be secretly recording. I'm sure there are checks that are done to make sure that the grand jurors aren't bringing in their, you know, satellite phones or whatever. Well, I mean, this all goes to whether there was actual harm. And, of course, at this stage of the game, after indictment, after conviction, Graham has to show some specific harm, some specific violation. I mean, a lot of Graham's argument just sounds like this was a facial attack on the standing order pre-indictment. And, of course, it's not that at all. He's already been indicted, convicted on these procedures. And if there was some violation of the true essence of the grand jury law, then he's got to show it at this stage. And, of course, as the court's already noted, there's no allegation. It's all a facial attack. Graham could have conducted discovery on this matter. You know, that's permitted when a criminal defendant files an attack on grand jury procedure. He or she can seek discovery to bolster his or her speculations. Graham did not do that in this case. At this late stage of the game, it's too late to just speculate and make a facial attack on the parameters of the standing order. It's also too late to say what else we could have done differently because there is no violation of the law in this case. If I may just briefly touch on harmless error, then, of course, in Bank of Nova Scotia, the test is, is there some grave doubt as to whether the alleged defect in the grand jury procedure actually affected the grand jury's decision to indict? And as just explained, there's not even an allegation of that here, much less evidence. And as Judge Carnes pointed out, it gets even worse for Mr. Graham because after the grand jury found only probable cause that he was guilty, the petit jury unanimously found him guilty beyond a reasonable doubt, guilty as charged on all counts. That necessarily implies that any, any defect that may have occurred before the grand jury was harmless. So, for those, of course, Mr. Graham also attacked the necessity of two of our warrants for wiretaps in this case. Do you want to go into that? You realize if you don't, she can't answer it in reply, but if you do, she can. If there are no further questions, then. I mean, you don't misunderstand me. You're welcome to do so. But, you know, there's no penalty for leftover time. I can take a hint. Thank you. Thank you. Ms. Copeland, you've got your five minutes. Thank you, Your Honor. Just several things. There are, there are outer limits to the secrecy things. They could, Judge Choplat, meet in a country club if it were a secure location. Well, the question, the question is whether they were in a place where they're in secrecy. And there's nothing untoward of what they did. Your Honor, if they were in the country club, though, they'd all be together. Well, go across the street, take them across the street into a vacant building or an office building and seal it off. But in your hypothetical, my understanding. Nothing wrong with that. Nothing. Okay. My understanding is that they would all be together in your scenario, though. Well, of course, you don't, you don't know whether they're all together. There are bathrooms and other rooms maybe together. Whether they wandered around, whatever. You don't know that. And that is certainly true. And the standing order did, Judge, made provisions for physical security here. They did post court security officers outside the door. But the risk here was the computer breach and the possibility of that. And we've seen it time and time again on court functions and on supposedly secure databases where there have been security breaches. But given this, Judge, talking about the states have, some of the states allow people to log in from their own computers, I would simply note the states have a different due process clause. Twenty-eight states don't even require a grand jury indictment. So I don't think the state's analogy is great. Your Honor, there was a fundamental defect in this indictment, though, because if a judge is justifying this under supervisory powers, you can't fundamentally change how the grand jury is constituted. And this order did that. It didn't provide for any sort of computer security. It didn't provide for seeing each other during deliberations. But did you take any discovery to find out what computer security might have been in place or anything related to how this grand jury actually committed its deliberations? Trial counsel did not, Your Honor. Thank you. If there are no further questions, I will cede the rest of my time to the Court. Thank you. Next we have...